[Cite as *Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 2014-Ohio-5354.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Raymond L. Eichenberger, | : | |
| Plaintiff-Appellant/ [Cross-Appellee], | : | |
| | : | No. 14AP-272 |
| v. | | (C.P.C. No. 10CV-8551) |
| Woodlands Assisted Living Residence, LLC et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees/ [Cross-Appellants]. | : | |
| | : | |

D E C I S I O N

Rendered on December 4, 2014

*Raymond L. Eichenberger,* for appellant/cross-appellee.

*Dworken & Bernstein Co., L.P.A.,* and *Richard N. Selby, II,* for appellees/cross-appellants.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Plaintiff-appellant, Raymond L. Eichenberger, personal representative of Jane E. Eichenberger, deceased, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Woodlands Assisted Living Residence, LLC ("Woodlands"), 7123 Industrial Park Blvd., Inc., Carol Ruff and Laura Baugus (collectively "appellees"). For the reasons that follow, we affirm the judgment of the trial court in part and reverse in part.

**A. Facts and Procedural History**

{¶ 2} This is the second time we have reviewed a judgment of the trial court disposing of appellant's claims prior to trial. In *Eichenberger v. Woodlands Assisted*

*Living Residence, L.L.C.*, 10th Dist. No. 12AP-987, 2013-Ohio-4057 ("*Eichenberger I*"), we set forth the procedural history and the factual background of the case as follows:

> On June 8, 2010, appellant filed a complaint alleging he had been "duly appointed by the Franklin County Probate Court as the Executor of the Estate of the late Jane E. Eichenberger" ("decedent"). (June 8, 2010 Complaint, 2.) According to the complaint, decedent was a resident of Woodlands, and on June 12, 2008, appellees "negligently failed to exercise control over" and "negligently failed to provide for" the decedent based upon her falling from a wheelchair being operated and controlled by appellees. (June 8, 2010 Complaint, 2-3.)
>
> * * *
>
> [O]n April 7, 2011, appellant sought leave to amend the complaint in order to substitute appellee Baugus for defendant Jane Doe 1.
>
> * * *
>
> By entry dated June 15, 2011, the trial court granted appellant's April 7, 2011 motion to amend the complaint, and the amended complaint filed on April 7 was deemed filed instanter. Subsequently, on June 24, 2011, appellant, apparently without leave of court, filed an amended complaint that appears to be identical to those amended complaints previously filed.
>
> On June 29, 2011, appellees filed a * * * motion to dismiss the complaint pursuant to Civ.R. 12(B)(1) and (6). Appellees argued (1) dismissal of the first claim was proper because it was a medical claim required to be filed within one year and with an affidavit of merit, (2) the entire complaint was required to be dismissed for lack of standing, and (3) Baugus was entitled to dismissal because appellant did not perfect service on her within one year.
>
> * * *
>
> On June 11, 2012, after considering evidence beyond the allegations of the complaint, the trial court granted appellees' June 29, 2011 motion to dismiss the complaint. * * * Although the exact basis of its decision is somewhat unclear, the trial court appears to have granted the motion to dismiss, pursuant to Civ.R. 12(B)(1), after having determined that appellant lacked standing at the time he commenced this litigation and

> that the filing of a complaint after he became executor did not relate back to the original complaint.

(Fn. omitted.) *Id.* at ¶ 2-9.

{¶ 3} On appeal, we determined that the issue raised by appellees' motion to dismiss was one of capacity to sue rather than standing. *Eichenberger I* at ¶ 15. Accordingly, we found that the trial court erred when it dismissed appellant's complaint pursuant to Civ.R. 12(B)(1) "[b]ecause capacity to sue does not challenge the subject-matter jurisdiction of a court." *Id.* at ¶ 16, citing *Washington Mut. Bank. v. Beatley*, 10th Dist. No. 06AP-1189, 2008-Ohio-1679, ¶ 11; *Vedder v. Warrensville Hts.,* 8th Dist. No. 81005, 2002-Ohio-5567, ¶ 15. We also determined that the trial court improperly "relied on matters outside appellant's complaint to resolve appellees' motion to dismiss. Specifically, the court relied on a purported docket sheet from the Franklin County Probate Court filed in support of appellees' motion to dismiss as well as the parties' arguments contained therein." *Id.* at ¶ 18. Accordingly, we reversed the judgment of the trial court and remanded the case for further proceedings. *Id.* at ¶ 32.

{¶ 4} Following remand, appellees filed a motion for summary judgment arguing that: 1) the complaint alleges a "medical claim" governed by the one-year statute of limitations under R.C. 2305.113; and 2) that appellant lacked the legal capacity to commence an action on behalf of decedent's estate and that appellant's refiled complaint did not relate back to the date of the original filing for purposes of the applicable statute of limitations.  Appellant responded that the claim alleged in the complaint sounds in ordinary negligence and that such claims are governed by the two-year statute of limitations pertaining to an action for bodily injury. R.C. 2305.10. Appellant further argued that even though he did not have legal capacity to commence an action on behalf of the estate when he filed the original complaint on June 8, 2010, he subsequently obtained an appointment as executor from the probate court on May 9, 2011, and filed an amended complaint curing the defect on June 24, 2011. According to appellant, the amendment relates back to the date of the original complaint for purposes of the applicable statute of limitations.

{¶ 5} In a decision dated March 14, 2014, the trial court determined that the complaint alleges a claim sounding in negligence only, and that such a claim is governed

by the two-year statute of limitations for actions based on bodily injury. R.C. 2305.10. The trial court, however, went on to conclude that appellant's amended complaint filed on June 24, 2011, did not relate back to the date of appellant's original filing date and that the statute of limitations barred appellant's cause of action "in light of [appellant's] lack of capacity to sue." (Trial Court Decision, 10.)

{¶ 6} Appellant filed a timely notice of appeal to this court on April 3, 2014. Appellees filed a cross-appeal on April 10, 2014.

## B. Assignments of Error

{¶ 7} Appellant assigns the following as error:

[I.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HIS DISCRETION IN RULING THAT THE PLAINTIFF WAS NOT THE REAL PARTY IN INTEREST IN THE LITIGATION, THAT PLAINTIFF HAD NO STANDING TO FILE THE LITIGATION, AND THAT THE AMENDED COMPLAINT OF THE PLAINTIFF DID NOT RELATE BACK TO THE FILING OF THE ORIGINAL COMPLAINT FOR PURPOSES OF THE APPLICABLE STATUTE OF LIMITATIONS.

[II.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN RULING THAT THE PLAINTIFF WAS NOT THE REAL PARTY IN INTEREST TO BRING THE LITIGATION IN THAT PLAINTIFF HAD BEEN THE TRUSTEE OF THE DECEDENT'S TRUST SINCE 2002. THE TRUST WAS THE SOLE BENEFICIARY OF THE LAST WILL AND TESTAMENT OF THE DECEDENT LATER ADMITTED TO PROBATE IN FRANKLIN COUNTY.

[III.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN RULING THAT THE CASE HAD NOT BEEN COMMENCED AGAINST DEFENDANT LAURA BAUGUS BY OBTAINING SERVICE AGAINST THAT DEFENDANT, OR SHOULD HAVE RECOGNIZED THAT SERVICE WAS LEGALLY OBTAINED THEREAFTER.

{¶ 8} For their cross-appeal, appellees/cross-appellants assign the following as error:

THE TRIAL COURT ERRED IN DETERMINING THAT PLAINTIFF/APPELLANT'S CLAIM WAS NOT A MEDICAL

CLAIM GOVERNED BY OHIO REVISED CODE SECTION 2305.113 SUBJECT TO A ONE (1) YEAR STATUTE OF LIMITATIONS.

## C. Standard of Review

{¶ 9}  Summary judgment is proper only when the party moving for summary judgment demonstrates that: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 10} Appellate review of summary judgment motions is de novo. *Corna/Kokosing Constr. Co. v. South-Western City School Dist. Bd. of Edn.*, 10th Dist. No. 02AP-624, 2002-Ohio-7028, ¶ 10, citing *Advanced Analytics Laboratories, Inc. v. Kegler, Brown, Hill & Ritter, L.P.A.,* 148 Ohio App.3d 440, 2002-Ohio-3328, ¶ 33 (10th Dist.). *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). " 'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Shaw v. Thomas*, 10th Dist. No. 99AP-1291, (Nov. 2, 2000), quoting *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).   We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. *Id.,* citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

## D. Legal Analysis

{¶ 11} In order to resolve the issues raised by appellant's assignments of error, we must first determine the statute of limitations applicable to appellant's claim. Accordingly, we will first consider the issue raised by appellees' cross-appeal.

### 1. Applicable Statute of Limitations

{¶ 12} Appellees contend that appellant's claim for relief based upon the bodily injury sustained by decedent sounds in medical malpractice and, as such, the one-year statute of limitations in R.C. 2305.113(A), governs the claim. The trial court determined that the complaint did not allege a medical claim. We agree with the trial court.

{¶ 13} There is no question that appellant's claim for relief accrued on June 12, 2008, and that appellant filed the original complaint on June 8, 2010. Accordingly, even if we determine that the amended complaint filed on June 24, 2011 relates back to the original, the claim is still time-barred if the one-year limitations period applies. As defined by R.C. 2305.113(E)(3), a "medical claim" is one "asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, * * * *and that arises out of the medical diagnosis, care, or treatment of any person.*" (Emphasis added.) R.C. 2305.113(A) states that "an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued."

{¶ 14} In appellant's affidavit, he avers in relevant part as follows:

> 5. The Defendants' assisted living facility is a residential facility for senior citizens and other persons who may need assistance with their day to day living activities, but the base *monthly rental charges for residents in the facility do not include any manner of health care,* only room and board. Defendant Carol Ruff is the administrator of Defendants' facility and has no formal medical training; Defendant Laura Baugus is an aide at Defendants' facility and has no formal medical training.
>
> 6. *A resident at the Defendants' facility may not be provided any health care services at all.*
>
> 7. Jane Eichenberger was injured on June 12, 2008 when she was dumped from a wheel chair in which she was riding at Defendants' facility, being pushed by Defendants' employee/Defendant Laura Baugus.
>
> * * *
> 10. *At the time of the accident, Jane Eichenberger was being transported by Defendant Laura Baugus to the common dining room of the Defendants' facility in order to eat lunch.*

(Emphasis added.)

{¶ 15} In concluding that the cause asserted in appellant's complaint was not a "medical claim," the trial court concluded the decedent fell out of her wheelchair on her

way to lunch and that "[t]ransportation to lunch is not ancillary to, or 'an inherently necessary part of' [decedent's] treatment or care as required for the one year statute of limitations to apply." (Trial Court Decision, 4.) A leading case from the Supreme Court of Ohio on this issue is *Rome v. Flower Mem. Hosp.*, 70 Ohio St.3d 14 (1994). In that case, plaintiff sustained an injury when his wheelchair collapsed as he was being taken to physical therapy. In holding that the complaint alleged a medical claim, the court stated that "the transport of [the patient] from physical therapy was ancillary to and an inherently necessary part of his physical therapy treatment." *Id.* at 16.

{¶ 16} Appellant's affidavit establishes that appellant was not transporting decedent to or from a prescribed medical treatment at the time she sustained her injuries. Consequently the rule of law in *Rome* supports the trial court's determination in this case.

{¶ 17} Subsequent to the opinion of the Supreme Court of Ohio in *Rome*, several courts of appeals have considered the question whether a complaint alleges a "medical claim" under similar facts to those alleged herein. In *Balascoe v. St. Elizabeth Hosp. Med. Ctr.*, 110 Ohio App.3d 83, 85 (7th Dist.1996), a patient fell after stepping on a piece of plastic on her way from the hospital bed to the bathroom. The court of appeals determined that the falling on the way to the bathroom did not arise directly from medical diagnosis, care or treatment, even though the patient had called for a nurse to assist her in walking to the bathroom. *Id.* at 86.

{¶ 18} In *Conkin v. CHS-Ohio Valley, Inc.,* 1st Dist. No. C-110660, 2012-Ohio-2816, a nursing home resident sustained her injuries while being moved from a wheelchair to a device known as a Hoyer lift. The trial court dismissed the action because plaintiff did not file the complaint within the one-year statute of limitations pertaining to medical claims. The court of appeals determined that the complaint did not allege a "medical claim" because there was no indication that the use of the lift was an inherent part of a medical procedure, that the use of the lift arose out of physician-ordered treatment, or that professional expertise or professional skill was required to transfer a patient to the lift.

{¶ 19} In *Hill v. Wadsworth-Rittman Area Hosp.*, 185 Ohio App.3d 788, 2009-Ohio-5421 (9th Dist.), a patient filed an action against a hospital and a nurse after she sustained injuries while being helped out of a wheelchair during her discharge from a

hospital. The trial court determined that the complaint alleged a "medical claim" and granted summary judgment in favor of the nurse. The court of appeals held that the complaint did not allege a "medical claim" because the conduct of hospital staff in escorting a patient in a wheelchair was not inherently necessary for any medical test or treatment.[1]

{¶ 20} In light of the prevailing case law, the only reasonable inference that may be drawn from appellant's affidavit is that decedent's transportation to the common dining room in order to eat lunch was neither ancillary to nor an inherently necessary part of any prescribed care or treatment. The undisputed evidence in this case distinguishes appellant's claim from the claim asserted by the plaintiff in *Rome*. In this case, as in *Belasco, Conklin,* and *Hill,* decedent's injuries did not occur during her transportation to or from a medical test, procedure or treatment. Consequently, appellant has not alleged an injury that arises out of the medical diagnosis, care, or treatment.

{¶ 21} In appellees' motion for summary judgment, appellees' claim that certain portions of appellant's deposition create a factual issue whether decedent's use of a wheelchair was "part of [decedent's] medical treatment designed to address the mobility issues that resulted from [decedent's] medical condition." (October 25, 2013 Motion for Summary Judgment, 8.) However, even when we construe appellant's testimony in appellees' favor, such testimony establishes, at most, that decedent needed to use a wheelchair for mobility after sustaining a serious hip injury. Although appellant acknowledged that a goal of decedent's rehabilitation plan was to transition from the use of the wheelchair to a walker, it is not reasonable to infer from appellant's testimony that decedent's use of a wheelchair was ancillary to or inherently necessary for any prescribed medical care or treatment.

---

1. Other cases supporting the conclusion that appellant's claim sounds in ordinary negligence include: *Haskins v. 7112 Columbia Inc.,* 7th Dist. No. 13 MA 100, 2014-Ohio-4154, ¶ 18 (Action against nursing home and its employees for breaking patient's leg while moving her in the course of changing her bed linens was not a "medical claim" where there is no indication that changing patient's bed linens "was part of some type of medical test or procedure, was ordered by a doctor, or that it required any medical expertise or professional skill."); *McDill v. Sunbridge Care Ents., Inc.,* 4th Dist. No. 04-11-2013, 2013-Ohio-1618 (Plaintiff was allegedly injured when two employees of a rehabilitation facility failed to keep her from falling backwards as she stood to wash her hands. The court of appeals held that plaintiff's injury did not arise out of medical diagnosis, care, or treatment, and was not a "medical claim," even though plaintiff's physician had ordered her not to leave her bed unassisted).

{¶ 22} In short, the evidence does not permit the inference that decedent's medical treatment included her use of a wheelchair to reach the dining area at appellees' facility. Accordingly, we hold that the trial court did not err when it determined that the claim asserted by appellant is not a "medical claim" within the meaning of R.C. 2305.113, and that the two-year limitation period pertaining to a cause for bodily injury governs the claim. Appellees' cross-assignment of error is overruled.

### 2. Capacity and Relation Back of Amendments

{¶ 23} Turning to appellant's first assignment of error, appellant argues that, pursuant to Civ.R. 17(A), the amended complaint established his legal capacity to commence this action on behalf of decedent's estate and that, pursuant to Civ.R. 15(C), the amended complaint relates back to the date of his original filing for purposes of the applicable statute of limitations. We agree.

{¶ 24} The operative facts surrounding appellant's first assignment of error are not in dispute. Accordingly, appellant's first assignment of error presents a purely legal issue. Under R.C. 2305.21, "causes of action * * * for injuries to the person or property * * * survive; and such actions may be brought notwithstanding the death of the person entitled * * * thereto." In our prior decision in *Eichenberger I*, we noted that only the personal representative of decedent's estate may commence a survival action. *Id.* at ¶ 13. *See also Shinaver v. Szymanski,* 14 Ohio St.3d 51, 55 (1984).

{¶ 25} When appellant filed the original complaint in 2008, the probate court had not yet appointed a personal representative of decedent's estate. Although the cause of action survived decedent's death, there was no person with the legal capacity to commence the action on behalf of decedent's estate. When appellant eventually obtained his appointment as the legal representative of the estate and filed the amended complaint, the two-year statute of limitations pertaining to claims for bodily injury had run. The question for this court is whether the amended complaint cured the defect in the original pleading and whether the amendment relates back to the date of the original for purposes of the applicable statute of limitations.

{¶ 26} In *Douglas v. Daniels Bros. Coal Co.*, 135 Ohio St. 641, 647-48 (1939), the Supreme Court of Ohio has addressed the relation back of amendments under similar facts to those presented herein. In *Douglas*, decedent's widow filed the wrongful death

action as the decedent's personal representative under the mistaken belief that she had been appointed. She discovered her error after expiration of the applicable statute of limitations and amended her complaint to show her later appointment as administrator. The Supreme Court of Ohio held that the widow's amendment of the wrongful death complaint relates back to the date of her original filing. In so holding, the Supreme Court of Ohio stated:

> In the instant case the cause of action set up in the petition is in no way affected by the corrections contained in the amendment. The amendment corrects the allegations of the petition with respect to plaintiff's capacity to sue and relates to the right of action as contradistinguished from the cause of action. A right of action is remedial, while a cause of action is substantive, and an amendment of the former does not affect the substance of the latter. An amendment which does not substantially change the cause of action may be made even after the statute of limitations has run.

(Citations omitted.) *Id.* at 647.

{¶ 27} The Ninth District Court of Appeals applied the same reasoning in *Stone v. Phillips,* 9th Dist. No. 15908 (Aug. 11, 1993). In that case, decedent's mother filed the wrongful death action against defendant identifying herself as both the guardian of decedent's minor children and the executrix of her daughter's estate. At the time she filed the complaint, the probate court had not yet appointed a representative of decedent's estate and did not appoint an administrator until after the applicable statute of limitations had run. The trial court denied defendant's motion to dismiss and granted Stone leave to amend the complaint by substituting the name of her attorney as administrator of the estate. The ninth district, relying on *Douglas,* concluded that the trial court did not err when it refused to dismiss a wrongful death suit on statute of limitations grounds inasmuch as the amended complaint related back to the date of the original pleading. In so holding, the court noted that "[t]he record contains no evidence that Stone acted other than on the reasonable belief that, as the closest relative of the decedent, she would be appointed administrator." *Id.*

{¶ 28} In *Klinger v. Corr. Corp. of Am., Inc.,* N.D. Ohio No. 4:1cv2299 (Dec. 12, 2012), decedent died intestate on October 29, 2009. On October 26, 2011, three days before the two-year statute of limitations expired, his son filed a wrongful death action

against defendants "Individually and as Administrator of the Estate." At that time, plaintiff had not yet opened an estate and he had not been appointed as personal representative of the estate. On May 24, 2012, the probate court appointed plaintiff administrator of his father's estate.

{¶ 29} On July 3, 2012, defendants filed a motion for summary judgment arguing that plaintiff was not appointed at the time he filed the complaint and was not subsequently appointed until after the statute of limitations had expired. On October 4, 2012, plaintiff filed an amended complaint for the purpose of curing the alleged defect regarding his capacity to sue. The district court denied the motion for summary judgment because the amended complaint related back to the date of the original complaint pursuant to Fed.R.Civ.P. 15(c)(1)(B).[2]

{¶ 30} In our opinion, the holdings of the Supreme Court of Ohio in *Douglas,* the Eleventh District in *Stone*, and the Northern District, Eastern Division in *Klinger* are consistent with the language of the current Ohio Civil Rules. In fact, Fed.R.Civ.P. 15(c)(1)(B), which formed the basis for the district court's decision in *Klinger,* is nearly identical to the relevant provisions of Civ.R. 15(C). As noted above, Civ.R. 15(C) states: "whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Similarly, Civ.R. 17(A), pertaining to parties, provides in relevant part as follows:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, * * * or a party authorized by statute may sue in his name as such representative without joining with him the party for whose benefit the action is brought. * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for * * *substitution of, the real party in interest. Such * * * *substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.*

(Emphasis added.)

---

[2] Under Fed.R.Civ.P. 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when * * * the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."

{¶ 31} By operation of Civ.R. 17(A), the amended complaint filed by appellant on June 24, 2011 had the effect of curing the defect in the original complaint regarding appellant's capacity to sue on behalf of decedent's estate and, pursuant to Civ.R. 15(C), the amended complaint relates back to the date of the original pleading because the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original. Thus, the action was timely filed as to the primary appellees on June 8, 2010.

{¶ 32} In reaching this conclusion, we are mindful that "[t]he spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies." *Peterson v. Teodosio,* 34 Ohio St.2d 161, 175 (1973). "Decisions on the merits should not be avoided on the basis of mere technicalities; pleading is not ' "a game of skill in which one misstep by counsel may be decisive to the outcome * * * [rather] the purpose of pleading is to facilitate a proper decision on the merits." *Hardesty v. Cabotage*, 1 Ohio St.3d 114 (1982), citing *Conley v. Gibson,* 355 U.S. 41, 48. For this reason, trial courts liberally permit pleadings to be amended to cure a defect so that determinations may be made on the merits. *Stone* citing *Archdeacon v. Cincinnati Gas & Elec. Co.*, 76 Ohio St. 97, 107 (1907); *Patterson v. V & M Auto Body*, 63 Ohio St.3d 573, 577 (1992). Our ruling in this appeal will permit the case to be decided upon the merits and not upon a pleading deficiency.

{¶ 33} We also recognize that the purpose of a statute of limitations "is to promote justice by preventing surprise through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared." *Kinney v. Ohio Dept. of Adm. Servs.*, 30 Ohio App.3d 123, 126 (10th Dist.1986). A statute of limitations serves to protect against "stale claims" or "faded memories" and to gain the "repose" of society. *Mewhorter v. Ex-Cell-O Corp.,* 23 Ohio St.3d 13, 14-15 (1986). In this instance, appellant filed a complaint against appellees within the statutory limitations period and obtained service upon the primary defendants shortly thereafter. In fact, the record shows that the parties had engaged in discovery and were preparing for trial just prior to the first appeal. Thus, our ruling in this appeal will not have the effect of preserving a claim that has become stale.

{¶ 34} In reaching the opposite conclusion, the trial court relied on the decision of the Fifth District Court of Appeals in *Gottke v. Diebold, Inc.*, 5th Dist. No. CA-3484 (Aug. 9, 1990). In that case, Diane Gottke filed a statutory wrongful death action against defendants "individually and as the personal representative of the estate." At the time Gottke filed the complaint, the decedent's husband was the duly appointed administrator of decedent's estate. The *Gottke* court noted that, under the wrongful death statute, Diane Gottke could have timely filed the action "in the name of" decedent's husband. R.C. 2125.01. The court stated that "the doctrine of relation back does not apply where the plaintiff misrepresents his/her capacity, and fails to procure appointment within the time prescribed by the appropriate statute of limitations, *or file 'in the name of' the personal representative.*" (Emphasis added.) *Id.* at 3. In ruling that Diane Gottke's later substitution as administrator did not relate back, the court stated:

> In the case sub judice the plaintiff had ample opportunity to follow the mandate of the statute and file the action in the name of the personal representative. Even when the defect was called to the attention of plaintiff prior to the expiration of the applicable statute of limitations plaintiff failed to alter course to correct the fatal deficiency.
>
> None of the authority cited by the appellant persuades this court that we should extend the principles of relation back to salvage the action originally filed without standing.

*Id.* at 4.

{¶ 35} In this case, appellant filed the original complaint against appellees just prior to the expiration of the two-year statute of limitations pertaining to claims for bodily injury. At that time, there was no personal representative of the estate to commence the action. And, as noted above, a survival action may be commenced only by the duly appointed representative of a decedent's estate. *Eichenberger I*; *Shinaver* at 55.[3] Consequently, unlike the plaintiff in *Gottke*, appellant did not have the opportunity either to file the complaint "in the name of" the representative of decedent's estate or to correct

---

[3] "Under the general survival statute, R.C. 2305.21, a victim's right of action for personal injuries survives and passes to her personal representative, and may be instituted for the benefit of the estate, notwithstanding that death resulted from injuries for which an action could also be maintained under the Wrongful Death Act, R.C. 2125.01 et seq."

the deficiency in the complaint prior to the expiration of the applicable statute of limitations.[4] Thus, this case is distinguishable from *Gottke*.

{¶ 36} Nevertheless, in ruling that the amended complaint did not relate back to the original for purposes of the statute of limitations, the trial court focused on appellant's lack of veracity regarding his status at the time he filed the complaint. The trial court stated that, "[t]he doctrine of relation back cannot be used to circumvent the applicable statute of limitations when Plaintiff's standing to originally bring suit rests upon a misrepresentation to the Court." (Trial Court Decision, 8.) We agree that as an attorney, appellant knew that he was not the legal representative of decedent's estate when he filed the original complaint. The trial court believed that appellant's conduct in knowingly misrepresenting his status in the original complaint was arguably a violation of Civ.R. 11 and his ethical obligation to the court.[5] However, we do not believe that a pleader's good or bad faith necessarily impacts the analysis under Civ.R. 15(A). The only relevant limitation on the relation-back principle espoused by Civ.R. 15(C) is that "the claim * * * asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." In this instance, the claim asserted in the amended complaint is identical to that set forth in the original complaint. Similarly, Civ.R. 17(A) states that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for * * * substitution."

{¶ 37} Moreover, to the extent that appellant's good or bad faith is relevant to the inquiry, we note that appellant's affidavit states that he and his adult sister are decedent's only legal heirs and that decedent's will designated him as executor. Thus, it is evident that when appellant identified himself as the duly appointed executor of decedent's estate, he was reasonably certain that the probate court would appoint him as such. *Stone*. In our view, appellant's admitted lack of diligence in obtaining his appointment does not alter our conclusion regarding the application of Civ.R. 17(A) and 15(C).

---

[4] As we concluded in *Eichenberger I*, the dispositive issue is legal capacity rather than standing.
[5] In *Toledo Bar Assn. v. Rust*, 124 Ohio St.3d 305, 2010-Ohio-170, the Supreme Court of Ohio concluded that a lawyer did not commit an ethical violation by filing a wrongful-death action on behalf of the administrator of a decedent's estate even though the lawyer had not obtained the administrator's authority.

{¶ 38} Additionally, to the extent that the trial court relied on the decision of the second district in *Wanamaker v. Davis*, 2d Dist. No. 2005-CA-151, 2007-Ohio-4340, and the decision of the Northern District Of Ohio, Eastern Division, in *Mohat v. Mentor Exempted Village School Dist. Bd. of Edn.*, N.D. Ohio No. 1:09 CV 688, 2011 WL 2174671 (June 1, 2011), each of those cases is legally distinguishable. In *Wanamaker*, the plaintiff did not file the malpractice action against the former attorney for the estate until after she closed the estate. Plaintiff subsequently reopened the estate but she did not obtain an appointment as administrator before the statute of limitations for legal malpractice had run. Relying on *Gottke*, the court of appeals determined that plaintiff's appointment as executor did not relate back to the date of the original complaint. Significantly, however, plaintiff in *Wanamaker* never filed an amended pleading after the probate court made her administrator. Thus, there was no amended pleading to relate back to the date of the original and there was no discussion of Civ.R. 15(A) in the decision of the court. *Id.* at ¶ 31-32. Similarly, in *Mohat*, plaintiff obtained her appointment as personal representative of the estate in the wrong county probate court and she did not receive a proper appointment until after the statute of limitations had run. The court held that plaintiff's appointment did not relate back to the date of the original pleading. However, as was the case in *Wanamaker*, the plaintiff in *Mohat* did not file an amended complaint after she obtained her appointment from the probate court. Consequently there was no amendment to relate back and there was no discussion of Fed.R.Civ.P. 15(c)(1)(B) in the decision of the court. *See Klinger* (distinguishing *Mohat* for the same reason.)

{¶ 39} In the final analysis, we believe that the reasoning employed by the courts in *Douglas*, *Stone* and *Klinger* is consistent with both the language and the spirit of the civil rules, and that the application of the relation back doctrine to the particular facts of this case offends none of the equitable principles underlying the statute of limitations. Thus, the trial court erred when it determined that appellant's amended complaint did not relate back to the date of the original and that the statute of limitations barred appellant's claims.

{¶ 40} For these reasons, we hold that the trial court erred when it granted summary judgment in favor of appellees, Woodlands and Ruff, and we sustain appellant's first assignment of error.

{¶ 41} To the extent that appellant argues in his second assignment of error that he had legal capacity to bring this action based upon his status as trustee of decedent's trust, our prior opinion in *Eichenberger I* disposes of that argument. *Eichenberger I* at ¶ 15 ("capacity concerns a determination as to whether an individual may properly sue, either as an entity or on behalf of another * * * the issue here is whether the action was brought by a *properly appointed administrator of the estate."*). (Emphasis added.)

{¶ 42} Accordingly, appellant's second assignment of error is overruled.

### 3. Commencement of the Action as to Baugus

{¶ 43} In appellant's third assignment of error, appellant contends that the trial court erred when it determined that appellant failed to commence the action against appellee, Laura Baugus. Appellant argues that his failure to obtain service upon Baugus within one year of filing the original complaint is excusable given appellees' dilatory tactics in the discovery process and the failure of the trial court to timely rule on his motion to compel and his motion to amend the complaint.

{¶ 44} The facts relevant to this assignment of error are as follows. Appellant filed the complaint on June 8, 2010. In addition to naming defendants, Woodlands and Ruff, appellant identified "Jane Doe I (unidentified employee of Defendants)." On October 25, 2010, appellees, Woodlands and Ruff, filed their initial disclosure of witnesses listing Laura Baugus as a witness, but not disclosing her employment or address. On or about August 20, 2010, appellant served discovery requests upon appellees. On September 7, 2010, Woodlands and Ruff filed a motion to stay discovery pending the disposition of their previously filed motion to dismiss.[6] Appellant opposed the motion arguing that the discovery was essential because he was "not currently aware of the identity of the * * * employees * * * who were pushing * * * decedent's wheelchair." (R. at 54.)

{¶ 45} On December 17, 2010, appellees, Woodlands and Ruff, filed a supplemental disclosure of witness wherein they state that Baugus "[h]as knowledge regarding [decedent's] accident in the wheelchair." (R. at 57.) However, the disclosure does not include an address or telephone number for Baugus nor does it specifically identify Baugus as either a current or former employee of Woodlands.

---

[6] The motion alleged that appellant did not timely file the action within the one-year statute of limitations applicable to medical claims.

{¶ 46} On March 16, 2011, appellant filed a motion to compel responses to outstanding discovery, including answers to interrogatories. One of the interrogatories to specifically requested "the name, residence address and telephone number of each person who was pushing or accompanying the wheelchair of decedent * * * when [she] was ejected from the wheelchair on June 12, 2008." Woodlands and Ruff responded with a memorandum contra wherein they allege that appellant failed to attempt to resolve the matter informally before filing the motion as required by Civ.R. 37(E). On March 22, 2010, appellant refiled the motion to compel.

{¶ 47} The record does not contain a written ruling on the motion to compel. However, on April 7, 2011, appellant filed a motion to amend the complaint in order to "identify party Jane Doe I with her legal name in the case (Laura Baugus), so that she can be served with the Amended Complaint." The proposed amended complaint provides an address for Baugus "c/o Woodlands Independent and Assisted Living Community, LLC." On April 21, 2011, Woodlands and Ruff filed a "Notice of Service of Discovery Responses" averring that they had responded to appellant's outstanding discovery requests on April 8, 2011. On that same date, Woodlands and Ruff filed a memorandum in opposition to appellant's motion to amend the complaint.

{¶ 48} The trial court granted appellant's April 7, 2011 motion to amend the complaint on June 15, 2011, one year and seven days after appellant filed the original complaint. On June 24, 2011, appellant instructed the clerk to serve the amended complaint on Baugus "c/o Woodlands Independent and Assisted Living Community." On June 29, 2011, Baugus moved the court to dismiss the complaint on the grounds that appellant did not serve her with a summons and complaint within the time required by Civ.R. 3(A).

{¶ 49} Under Civ.R. 3(A) "[a] civil action is commenced by filing a complaint with the court, if service is obtained within one year * * * upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ.R. 15(D)." " 'In general, the one-year time requirement in Civ.R. 3(A) cannot be enlarged.' " *Apostolouski v. Sharp,* 10th Dist. No. 04AP-1105, 2005-Ohio-2559, ¶ 22, quoting *Temple v. John Galt Co.,* 10th Dist. No. 96APE10-1364 (Apr. 10, 1997). However, in *Robinson v. Commercial Motor Freight, Inc.,* 174 Ohio St. 498 (1963), the Supreme Court of Ohio determined that when

a clerk is forgetful or careless in failing to promptly serve the summons, the harsh application of a rule requiring service by a certain date may be inappropriate. *Id.* at 502. In that case, the attorney had repeatedly called and requested the clerk to serve the summons and had filed a document demanding that service be made. *Id.*

{¶ 50} The Sixth District Court of Appeals extended the reasoning of the *Robinson* case in *Scott v. Orlando*, 2 Ohio App.3d 333 (6th  Dist.1981). In *Scott*, plaintiff timely filed a complaint on August 31, 1979, alleging medical malpractice, but plaintiff did not immediately request service upon defendant. Thereafter, on June 25, 1980, plaintiff requested that the clerk serve defendant. The clerk forwarded the case to the trial judge who requested that plaintiff provide a written explanation for the delay in requesting service. Plaintiff submitted a letter of explanation on July 16, 1980, but service upon defendant was not made until September 12, 1980.  The trial court subsequently granted defendant's motion to dismiss. The court of appeals reversed the trial court holding that "a cause of action will not be barred by failure to obtain service within the prescribed time when such failure is caused by unreasonable delay attributable to the clerk of courts or the court itself." *Id.* at 334-35.

{¶ 51} In *Thomas v. Corrigan,* 135 Ohio App.3d 340 (11th Dist.1999), the court of appeals cited *Robinson* and *Scott* in excusing plaintiff's failure to obtain service upon defendant within one year. In that case, the court found that plaintiff's "ability to serve appellee within a year was defeated by the trial court's erroneous dismissal of the case." *Id.* at 346. The court of appeals ordered the case reinstated to the trial court's docket to allow appellant the opportunity to obtain proper service on appellee. *Id.*

{¶ 52} The foregoing case law establishes that the one-year time requirement of Civ.R. 3(A) may be enlarged where the failure of service is the result of circumstances outside plaintiff's control.   In this case, appellant claims that the dilatory discovery tactics of appellees unfairly prejudiced his ability to obtain service upon Baugus. Appellees respond that Baugus' identity was known to appellant as early as October 25, 2010, when appellees filed their initial disclosure of witnesses.

{¶ 53} Loc.R.  43 of the Franklin County Court of Common Pleas governs the disclosure of lay and expert witnesses in relevant part as follows:

> **43.01.  (04-26-00)  Initial  Joint  Disclosure  of  All Witnesses**

Each party shall, not later than the date for disclosure designated in the Case Schedule, serve on all parties and file with the court a written disclosure of all persons with relevant factual or expert knowledge whom the party reserves the option to call as witnesses at trial.

**43.02. (04-26-00) Supplemental Joint Disclosure of All Witnesses**

Each party shall, no later than the date for disclosure designated in the Case Schedule, serve on all parties and file with the court a written disclosure of all persons whose factual or expert knowledge did not appear relevant until the witnesses were initially disclosed, whom the party reserves the option to call as witnesses at trial.

**43.03. Scope of Disclosure**

*Disclosure of witnesses under this rule shall include the following information:*

*(a) All witnesses. Name, addresses, and business phone number (or home phone number, if no business number is available).*
*(b) Lay witnesses. A brief description of witness' relevant knowledge.*

*\* \* \**

**43.04. Exclusion of Testimony**

Any witnesses not disclosed in compliance with this rule may not be called to testify at trial, unless the Trial Judge orders otherwise for good cause and subject to such conditions as justice requires.

(Emphasis added.)

{¶ 54} Appellees' initial disclosure of witnesses, filed on October 25, 2010, did not comply with Loc.R. 43.01 or 43.03 of the Franklin County Court of Common Pleas inasmuch as appellees did not provide an address and phone number for Baugus nor did they include a brief description of her relevant knowledge. Had appellees complied with the local rule, the initial disclosure would have provided appellant with the information he

needed to obtain service upon Baugus. There is no question that the necessary facts were known to appellee, Woodlands, inasmuch as Baugus has been in their employ at all times relevant hereto.

{¶ 55} Appellant sought discovery from appellees in order to obtain the necessary information regarding the identity of Jane Doe I, and was subsequently forced to seek trial court intervention in the form of a motion to compel discovery when appellees failed to respond to appellant's discovery requests. Additionally, in their supplemental disclosure of witnesses, appellees briefly describe Baugus' relevant knowledge but did not disclose her employment status nor did they provide an address and phone number as required by Loc.R. 43.02 and 43.03.

{¶ 56} In short, the record establishes that appellees never disclosed Baugus' address or phone number as required by the relevant local rule and that appellees did not respond to appellant's interrogatories until April 8, 2011, the day after appellant filed his motion to amend the complaint. Had appellees complied with their obligations under the applicable rules, appellant would have identified Baugus as Jane Doe I, and obtained a valid service address well before the one-year period expired. In our view, appellees' dilatory tactics unfairly prevented appellant from discovering the identity of a previously unidentified defendant and that, under the circumstances, enlargement of the one-year time requirement of Civ.R. 3(A) is justified.

{¶ 57} However, even though the circumstances of this case justify an enlargement of the one-year time requirement of Civ.R. 3(A), we find that appellant has not complied with the mandatory requirements of Civ.R. 15(D) in obtaining service upon Baugus. Civ.R. 15(D), governing amendments where the name of a party is unknown, provides as follows:

> When the plaintiff does not know the name of a defendant, that defendant may be designated in a pleading or proceeding by any name and description. When the name is discovered, the pleading or proceeding must be amended accordingly. The plaintiff, in such case, must aver in the complaint the fact that he could not discover the name. The summons must contain the words "name unknown," and a copy thereof must be served personally upon the defendant.

{¶ 58} In *Amerine v. Haughton Elevator Co., Div. of Reliance Elec. Co.,* 42 Ohio St.3d 57 (1989), the Supreme Court of Ohio held that strict compliance with Civ.R. 15(D) is required if an amended complaint is to relate back to the original for purposes of Civ.R. 3(A) and 15(C). *Id.* at 58. The Supreme Court of Ohio stated unequivocally that:

> Civ.R. 15(D) specifically requires that the summons *must* be served personally upon the defendant. In this case, service was performed by way of certified mail which is clearly not in accordance with the requirement of Civ.R. 15(D). Civ.R. 15(D) also requires that the summons must contain the words "name unknown."

(Emphasis sic.) *Id.*

{¶ 59} The record reveals that, on June 24, 2011, appellant instructed the clerk to serve the "summons and amended complaint" by certified mail upon "Laura Baugus c/o Woodland Independent and Assisted Living Community." Based upon appellant's instructions, the summons issued June 30, 2011 did not contain the words "name unknown" and service of a copy of the complaint was not made personally upon Baugus.[7] Under *Amerine,* appellant's failure to comply with the specific requirements of Civ.R. 15(D) resulted in the failure of service upon Baugus. *See also Brady v. Bucyrus Police Dept.,* 194 Ohio App.3d 574, 2011-Ohio-2460, ¶ 24 (3d Dist.) (Wrongful death action against city and previously unknown police officer was not commenced as to the officer where the plaintiff served the summons and complaint by certified mail without the phrase "name unknown").

{¶ 60} Finally, to the extent that appellant claims that Baugus voluntarily submitted to the court's jurisdiction by making an appearance for the purpose of asserting the defense of insufficiency of service, Civ.R. 12(B)(5) specifically provides that such a defense may be asserted in a pre-answer motion.

### E. Conclusion

{¶ 61} Having overruled appellees' cross-assignment of error and appellant's second and third assignments of error, but having sustained appellant's first assignment

---

[7] We note that the record does not contain a return receipt indicating completed certified mail service upon Baugus at the address provided by appellant.

of error, we reverse in part the judgment of the Franklin County Court of Common Pleas and remand the case for further proceedings consistent with the law and this decision.

*Judgment affirmed in part, overruled in part; case remanded for further proceedings.*

TYACK, J., concurs.
SADLER, P.J., concurs separately.

SADLER, P.J., concurring separately.

{¶ 62} In addition to agreeing with the majority's decision reversing in part and affirming in part the trial court's decision, I agree with the majority's disposition of appellant's three assignments of error and appellees' cross-assignment of error. However, because I believe the majority's decision includes analysis and discussion beyond what is necessary to determine appellant's third assignment of error, I concur separately. As set forth by the majority, appellant's third assignment of error must be overruled because of the failure to satisfy the mandatory requirements of Civ.R. 15(D). Thus, in my view, there is no need to determine whether or not the circumstances herein justify an enlargement of the one-year time requirement set forth in Civ.R. 3(A). Therefore, I concur in the majority's disposition of the third assignment of error to the extent that I agree with the majority's analysis of Civ.R. 15(D).

{¶ 63} Accordingly, I concur separately.

_____